# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT KNOXVILLE
### Assigned on Briefs October 28, 2003

## STATE OF TENNESSEE v. CHRISTOPHER PAUL WILSON

### Direct Appeal from the Criminal Court for Washington County
### No. 27319     Robert E. Cupp, Judge

### No. E2003-00344-CCA-R3-CD
### December 31, 2003

The defendant, Christopher Paul Wilson, pled guilty to one count of reckless vehicular homicide, a Class C felony, and three counts of reckless aggravated assault, Class D felonies. Pursuant to the plea agreement, the trial court sentenced him as a Range I, standard offender to concurrent terms of six years for the reckless vehicular homicide conviction and two years for each of the reckless aggravated assault convictions, for an effective sentence of six years. On appeal, the defendant argues that the trial court erred in denying alternative sentencing. Following our review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

David F. Bautista, District Public Defender, and Deborah Black Huskins, Assistant District Public Defender, for the appellant, Christopher Paul Wilson.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steven R. Finney, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant's offenses stemmed from an automobile accident that occurred during the early morning hours of September 21, 2000, on Cherokee Road in Washington County. The then eighteen-year-old defendant, driving in the rain and fog with no headlights, crashed head-on into a guardrail which resulted in the death of one passenger, Heather Nicole Tipton, and injuries to the three other passengers, Brandy Greene, Stephanie McCurry, and Trista Jones.

At the defendant's January 13, 2003, probation hearing, Trooper Diane Mays testified that she was called to the scene of the accident where she found the defendant's blue Honda automobile

sitting with the front end against a guardrail. She said that Heather Nicole Tipton, who was riding in the front seat, died as a result of her necklace becoming hung on the seat and being ejected, cutting her carotid artery in the process. Trooper Mays subsequently spoke to Greene, McCurry, Jones, and the defendant at the hospital. Initially, all three girls said they did not remember what had happened, but thirteen-year-old Greene later said that the defendant and some of the girls had taken some pills and that she had driven the group to Wal-Mart. According to Greene, even though the defendant was "really out of it," he decided to drive when the group left Wal-Mart at about 4:00 a.m. Greene told Trooper Mays that the defendant drove erratically, going from one side of the road to the other, and she screamed at him to let her drive.

Because the defendant told Trooper Mays that there was a problem with his brakes, she had his vehicle inspected at a local body shop where the brakes were found to be in working condition.[1] Greene also had told Mays that the brakes on the defendant's car were soft but not inoperable. Trooper Mays read the results of the defendant's toxicology report which was positive for one narcotic drug.

Stephanie McCurry testified that the defendant picked up her and the other girls around midnight. Everyone, except Greene, ingested "quite a bit of pills" during the night, and Greene drove the group to Wal-Mart. McCurry said she thought the defendant took four Somas and about ten Valiums. She did not know if the defendant had driven erratically because she passed out from the pills she took. McCurry also said she had driven the defendant's car earlier that evening and the brakes were "very bad."

Cindy Harrell, the mother of Heather Nicole Tipton, testified that Tipton was eighteen years old at the time of her death and had been living with her grandmother, Dorothy Burrow. Both Ms. Harrell and Ms. Burrow testified that the defendant deserved a sentence of more than six years. Ms. Burrow said that the defendant had never apologized to her, and she had not received the letter he wrote to the deceased's family.

The defendant testified that the accident occurred at about 4:00 a.m., and it was raining and foggy at that time. He said he had never driven down Cherokee Road before, and his brakes were not "doing too good. They'd go almost to the floor before they'd start stopping, then it would take a while for them to stop." He denied that Brandy Greene drove the group to Wal-Mart. Although admitting that he drove with no headlights, the defendant denied driving erratically or speeding. The defendant also admitted that he ingested "[m]aybe two" Valiums that night but denied taking ten, in contradiction to McCurry's testimony. The defendant's letters of apology addressed to each of the victim's families were admitted into evidence.

The defendant further testified that he had no prior criminal record, his bond for the instant offenses had been revoked in August 2002, and he was currently incarcerated at the Washington

---

[1] A statement dated September 27, 2000, from Olde Jonesborough Body Shop, admitted into evidence, reflects that all fluid levels, as well as the brake pedal, were normal.

County Detention Center.[2] He said that he was diagnosed with a hereditary blood disease in 1997 and is under the care of Dr. David Beals.[3] The defendant said he has had one blood clot since being incarcerated, resulting in an overnight stay at the Unicoi County Hospital. The defendant said that he receives his Coumadin medication in jail but has not seen a physician.

Several witnesses testified on behalf of the defendant. Tiffany Edwards, the defendant's cousin, testified that the defendant takes daily medication for his hereditary blood condition, and the medication affects the way he acts. She described the defendant as an "excellent young gentleman . . . a kindhearted person." She said the defendant told her that "he wished it would have been him in [Tipton's] place." The defendant's aunt, Donna Powers, testified that she, as well as the defendant's mother and uncle, has the same hereditary blood condition as the defendant. The condition causes pain, swelling, and, occasionally, inability to walk. Powers said she takes blood thinner and pain medications and must have her blood tested on a regular basis. She described the defendant as "a good boy" and said he had never been in trouble before.

Teresa Higgins, the defendant's mother, testified that the defendant's hereditary blood condition is worse than hers, and the defendant's doctor recommended that he have his blood checked twice a month. She said that the defendant has had blood clots in his lungs and leg since being incarcerated, and he did not receive the proper medical treatment. According to Ms. Higgins, the defendant had been taking Valium for depression at the time of the accident and had only had his driver's license and car for three days before the accident. She said that the videotape made of the defendant's car at the impound lot showed that the master cylinder was empty and showed what appeared to be brake fluid around the rim of a tire. If granted probation, the defendant could live with her and she would drive him wherever he needed to go.

Jerome Hall, a mechanic with twenty years of experience, testified that he inspected the defendant's car at defense counsel's request. He said that the brake line on the left front wheel was seeping brake fluid and the master cylinder reservoir was empty. There was also evidence of a leak inside the car under the carpet. Regarding the report showing that the brake fluid level was normal, Hall said that "if you don't put a lot of pressure on it . . . the fluid will sit in the reservoir for weeks." On cross-examination, Hall acknowledged that a head-on collision into a guardrail could cause some damage as well.

---

[2] During the pendency of the charges comprising the present appeal, the defendant was arrested in Unicoi County and charged with "DUI under the influence of drugs." As we will discuss, he asserted his Fifth Amendment rights when asked at the probation hearing about this pending charge.

[3] A letter from Dr. Beals dated August 21, 2002, was admitted into evidence and states that the defendant "has a protein-s deficiency, which has caused him blood clots in the right calf in the past times two and to the right lung times two. The patient needs chronic Coumadin blood thinner for this. He has blood work checked at least once a month, sometimes more often, depending on what the blood thinness shows. The patient is also on Xanax 1 mg twice a day for anxiety."

At the conclusion of the probation hearing, the trial court found, *inter alia*, the Valium the defendant took the night of the accident was not prescribed, his driving with no headlights in the rain and fog was recklessness, and he had a juvenile conviction for assault. The trial court also noted that the defendant had been employed prior to the accident, had received treatment for depression and detoxification after the accident, had expressed remorse to the victims and their families, and suffers from a "true medical condition." In denying alternative sentencing, the trial court found that the defendant's potential for rehabilitation was "just absolutely nil" based on his being charged with DUI while the present case was pending. The court also found that confinement was necessary to avoid depreciating the seriousness of the offenses.

## ANALYSIS

The defendant argues that he should have been granted an alternative sentence because the trial court found he had been candid which weighed in favor of his potential for rehabilitation. He also asserts that he is eligible for probation because his mental condition supports a finding under the special needs subsection of Tennessee Code Annotated section 40-36-106(c), which provides:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (1997). If an offender meets the criteria under Tennessee Code Annotated section 40-35-102(6), the trial court "must presume that he is subject to alternative sentencing." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, if the court is presented with "evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision." Id. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Evidence sufficient to overcome the presumption in favor of alternative sentencing includes evidence showing that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997); see Ashby, 823 S.W.2d at 169.

Tennessee Code Annotated section 40-35-303(a) provides that a defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is eight years or less. Tenn. Code Ann. § 40-35-303(a) (1997). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See id. § 40-35-303(b) (1997). The burden is upon the defendant to show that he is a suitable candidate for probation. Id.; State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id.

Much of the defendant's proof at the probation hearing and on appeal is based on his professed remorse for the death and injuries resulting from the convictions which comprise the present appeal and his vow that he would not again drive while intoxicated. At the probation hearing on the charges in the present appeal, after the defendant asserted his right against self-incrimination as to the pending DUI charge, defense counsel, who was not representing the defendant on that charge, acknowledged the need of the court to know the details of the new charge. The court responded:

> It's a problem, [defense counsel]. I mean, . . . you know as well as I do, every one of you know as well as I do that . . . whether or not what I'm going to do in this case hinges upon, as much as anything, the fact that he caught that DUI under the influence of drugs. And he chooses not to tell me something about it, and I can understand why. He's entitled to take the Fifth Amendment. But he's here on a sentencing hearing today. Why that case has drug out in Unicoi County, I have no idea, and it's not your responsibility. Your responsibility is to him today, and you're exercising that responsibility . . . the way you should. But he chooses to take that Fifth and that's his prerogative in that case. But, you know, here's a young man that's eighteen (18) when the [accident] happens, that turns twenty (20), and then two (2) years older and pulls down a new DUI. This court [doesn't] need him to say anything. This court viewed the film of that case, and I didn't even have to view all of it.

I cut it off, what, less than probably two (2) or three (3), five (5) minutes into viewing it, if that much. So that's his prerogative.

In denying alternative sentencing, the trial court reasoned:

[T]he potential or lack of potential for rehabilitation or treatment is a big issue with this court, a big issue. This court has no alternative except to find that his potential for rehabilitation is just absolutely nil. I don't do that, he did that. He showed me that when he chose to pop some pills and get a young lady in the car. And it's beyond my . . . comprehension that if I had a charge in which I had the potential to go to the penitentiary for killing someone, that for one minute I would put myself right back in that position again, and it's beyond anything that I can comprehend. I've considered his prior criminal history. He has none that has no significance to this case whatsoever. The character of him . . . what I know about him through this hearing and what I've read about him, I've considered. Whether the defendant might reasonably be expected to successfully rehabilitate, and I have to say no. The reason, again, that I've already said is how can I expect him to rehabilitate when he catches a new charge while the death case is pending. And I have to also interject in there that the interest of society is being protected from possible future criminal conduct from this defendant for those reasons. Confinement is also necessary in this case to avoid depreciating the seriousness of the offense.

In attempting to assess the defendant's potential for rehabilitation, the trial court obviously was concerned that he had been arrested on similar facts, driving after using drugs, while awaiting disposition of the charges which are the basis for the present appeal. In State v. Souder, 105 S.W.3d 602, 604-05 (Tenn. Crim. App. 2002), perm. to appeal denied (Tenn. 2003), this court was presented a similar situation, when the trial court had concluded that a defendant, convicted of attempted aggravated sexual battery, had not put "his best foot forward and allow[ed] the Court to make a rational decision" after apparently asserting at his sentencing hearing that he had not done "that stuff" since "years ago," but refused to answer whether he had "molested other children in the past." The defendant argued on appeal that, in denying probation, the trial court had "relied on his assertion of his rights against self-incrimination." Id. at 607. This court disagreed, concluding that the trial court, instead, had "included the Defendant's silence in its overall calculus for determining whether the Defendant was a suitable candidate for probation." Id. at 608. Thus, as this court explained, a defendant's candor could be considered in assessing his rehabilitative potential:

[A] criminal defendant's rehabilitative potential is a factor to be considered in the grant or denial of probation. Candor is a relevant factor in assessing a defendant's potential for rehabilitation, see State

v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994), and the lack of candor militates against the grant of probation. See, e.g., State v. Kendrick, 10 S.W.3d at 656. The burden of proving suitability for probation rests with the defendant. Tenn. Code Ann. § 40-35-303(b). Accordingly, we conclude that the trial court did not infringe upon the Defendant's rights under the Fifth Amendment to the United States Constitution, or Article I, Section 9 of the Tennessee Constitution, when it relied, in part, on the Defendant's assertion of those rights at sentencing, in order to deny probation.

Id.

As had been the situation in Souder, the trial court in the present appeal was required to determine the rehabilitative prospects of a defendant whose other conduct, similar to the crimes charged, was highly relevant to sentencing determinations. In fact, in the present appeal, the conduct consisted of a DUI arrest occurring after the charges which were the basis for the probation hearing. We conclude, as we did in Souder, that the trial court was proper in considering the silence of the defendant as to this new charge, especially in view of its similarity to the convictions for which he was being sentenced. Further, we conclude that the record supports the determination of the trial court that the defendant was not an appropriate candidate for alternative sentencing.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE